UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NNN SIENA OFFICE PARK I 2, LLC a Delaware limited liability company, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WACHOVIA BANK NATIONAL ASSOCIATION, now known as WELLS FARGO BANK, NATIONAL ASSOCIATION, successor by merger, et al., <br><br> Defendants. | Case No. 2:12-cv-01524-MMD-PAL <br><br> ORDER <br><br> (Def.'s Motion for Summary Judgment – dkt. no. 86) |

### I. SUMMARY

This case arises out of Defendant Holland & Hart LLP's legal representation of several investors owning commercial properties ("the Property") as tenants-in-common. Holland & Hart was retained by the property manager to represent the investors in an action initiated by a court-appointed receiver who sought to include the Property in the receivership estate. Plaintiffs, a subset of the investors, claim that Holland & Hart's purported representation of them without their authorization was improper and unnecessarily embroiled them in litigation. Plaintiffs brought this suit seeking the total cost of legal representation as damages.

Before the Court is Holland & Hart's Motion for Summary Judgment. (Dkt. no. 86.) The Court heard oral argument on August 28, 2014. Because the Court finds that Holland & Hart's representation was authorized, the Court grants summary judgment. Holland & Hart's Motion to Exclude Expert Witness (dkt. no. 88) is denied as moot.

## II. BACKGROUND

The following material facts are undisputed.

Plaintiffs are thirty (30) Delaware limited liability companies owning two commercial properties in Henderson, Nevada ("the Property") as tenants-in common. (Dkt. no. 1 ¶¶ 1, 9, 11, 29.) In June and July of 2007, Plaintiffs, along with other investors (collectively, the "Investors"), purchased the Property through a transaction involving the sale of the Property ("the Investment") from R.O.C.S.E.V. Capital, LLC ("ROCSEV") pursuant to a purchase and sale agreement ("PSA").[1] (*Id.* ¶¶ 29, 32, 34, 36.) Under the PSA, the parties agreed that $3,023,306.63 of the purchase price would be held in escrow to cover shortfalls in rental receipts from certain tenants of the Property as well as lost revenue and improvement costs resulting from another tenant's early termination (the "Holdback Funds"). (*Id.* ¶ 16.) After the PSA was executed, investors of ROCSEV's parent company filed several lis pendens on the Property relating to litigation involving ROCSEV, its parent company, and its controlling principal. (*Id.* ¶ 17.) Consequently, the parties agreed to withhold an additional $300,000.00 of the purchase price in a separate escrow account (the "Litigation Holdback") to pay costs associated with resolving future legal disputes concerning the Property post closing. (*Id.*)

As part of the Investment, the Investors entered into a management agreement (the "Management Agreement") and a tenants-in-common agreement (the "TIC Agreement"). (Dkt. no. 86-7, Exh. G; dkt. no. 86-8, Exh. H.) Through the TIC Agreement, the Investors expressed their desire "to provide for the orderly administration of the Property and to delegate authority and responsibility for the operation and management of the Property" (dkt. no. 86-8, Exh. H), and agreed to appoint Triple Net Properties Realty, Inc. ("TNPR") as Property Manager "to act on behalf of the Tenants in Common

---

[1]The transaction was structured in three waves. An initial group purchased the Property, then sold portions of their interests to subsequent groups of investors for cash and an apportioned assumption of the loan obligation used to make the initial purchase. (*Id.* ¶¶ 29, 32, 34, 36.)

with respect to the management, operation, maintenance and leasing of the Property." (*Id.* § 2.) The Management Agreement required TNPR to "manage the Property in an efficient, economic, and satisfactory manner" and to "manage everything reasonably necessary for the proper operation of the Property for the tenants thereof." (Dkt. no. 86-7, Exh. G, § 2.2.) The Management Agreement also gave TNPR authority to pay for "all expenses of the operation, maintenance and repair of the Property contemplated by the Budget directly from the Operating Account . . . including . . . (f) legal fees of attorneys." (*Id.* § 7.1.)

In December 2007, TNPR's parent company merged with Grubb & Ellis Company ("G&E"). TNPR was renamed Grubb & Ellis Realty Investors, LLC ("GERI") and continued to serve as Property Manager. (Dkt. no. 1 ¶ 39.)

On February 6, 2008, the state of Utah charged Val Southwick, ROCSEV's controlling principal, with nine second-degree felonies for violating state securities laws. (*Id.* ¶ 40.) The same day, the SEC filed a civil suit against Mr. Southwick and several of his controlled entities, including Vescor LLC, ROCSEV's parent company, for violating securities law by operating a Ponzi scheme. (*Id.* ¶ 41.) As part of the civil action, the U.S. District Court for the District of Utah appointed Robert Wing as receiver of the Southwick-related entities' assets (the "Receiver"). (*Id.* ¶ 43.)

On June 8, 2008, the Receiver notified GERI of its claim that the Holdback Funds and Litigation Holdback belonged to the receivership estate as assets of Vescor LLC. (*Id.* ¶ 44.) The funds in the escrow accounts were frozen while the SEC investigated the sale of the Property. (*Id.* ¶ 43.) The freeze placed on the Holdback Funds decreased profits from the Property, and GERI notified the Investors that it was necessary to reduce cash distributions. (*Id.* ¶ 45.) GERI retained counsel at Holland & Hart to contest the Receiver's claim and clarify ownership of the Holdback Funds. (*Id.* ¶ 46.) In quarterly reports sent to the Investors, GERI also informed the Investors of the Receiver's claims and its response. (Dkt. no. 86-9, Ex. M.) The quarterly reports included descriptions of payments GERI made to Holland & Hart. (*Id.*)

The Receiver eventually began an investigation into the Investment transaction and later filed suit against GERI on July 6, 2009, alleging that the Property was fraudulently transferred in continuation of Mr. Southwick's Ponzi scheme (the "Receiver Action"). (Dkt. no. 1 ¶ 47.) The Receiver asserted rights to the Holdback Funds as well as the Property itself. (*Id.*) GERI once again retained Holland & Hart, and instructed Holland & Hart to file a motion to intervene on behalf of the Investors, as they were the Property owners and real parties in interest.[2] (*Id.* ¶¶ 48-49.) The motion was granted and the Investors became parties to the Receiver Action. (*Id.* ¶ 49.) GERI used the Property's funds to pay for the legal representation. (*Id.* ¶ 48.) GERI provided updates about the Receiver Action, including its payments to Holland & Hart, in quarterly reports. (Dkt. no. 86-9, Exh. M).

In June 2010, a group of the Investors (the "Minority TICs") retained separate counsel to represent them in the Receiver Action and to pursue claims against the original sponsors of the Investment and GERI. (Dkt. no. 1 ¶ 54.) The law firms of Hansen Bridgett and Ray Quinney & Nebeker were substituted in place of Holland & Hart for the Minority TICs. (Burton Dep., dkt. no. 86-9, Exh. K at 56.) The remainder of the Investors (the "Majority TICs") did not object to Holland & Hart's representation and — Holland & Hart continued to represent them until December 2011. Ultimately, in March 2013, the Investors settled with the Receiver, paying $864,000.00 of the Holdback Funds to extract themselves from the Receiver Action. (Dkt. no. 1 ¶ 59.)

Plaintiffs, a subset of the Investors, then filed this lawsuit against Holland & Hart for legal malpractice and breach of fiduciary duty. (Dkt. no. 1.) Holland & Hart now moves for summary judgment on all of Plaintiffs' claims.

///

///

---

[2] A number of Investors were not added to the motion to intervene and, in turn, were not parties to the Receiver Action.

## III.  DISCUSSION

### A.  Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may

not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B. Analysis

Plaintiffs argue that Holland & Hart acted without authorization and breached its fiduciary duties to Plaintiffs. Holland & Hart seeks summary judgment based on two independent arguments: (1) Plaintiffs' grant of authority to GERI authorized Holland & Hart's representation of Plaintiffs; and (2) Plaintiffs cannot articulate any harm arising from Holland & Hart's representation even if such representation was not authorized. Because the undisputed facts show GERI had actual implied authority to retain legal counsel, the Court grants Holland & Hart's Motion. The Court does not reach Holland & Hart's damages argument.

Under Nevada law, a principal "may be bound by the acts of its agent as to third parties who have no reason to know of the agent's improper conduct." *Homes Sav. Ass'n v. Gen. Elec. Credit Corp.*, 708 P.2d 280, 283 (Nev. 1985). However, for the acts of the agent to bind the principal, the agent "must have actual authority, express or implied, or apparent authority." *Dixon v. Thatcher*, 742 P.2d 1029, 1031 (Nev. 1987). "Actual authority includes both implied authority and incidental authority." *Coblentz v. Riskin*, 322 P.2d 905, 907 (Nev. 1958). Thus, in certain instances, a principal may simultaneously have a cause of action against an agent for exceeding the scope of his agency and be liable to a third party with whom the agent contracted for services. *See Homes Sav. Ass'n*, 708 P.2d at 283.

Holland & Hart was retained by GERI, who was undisputedly the agent of the Investors. Plaintiffs, however, argue that because GERI exceeded the scope of its actual

agency in retaining counsel for the Receiver Action, Holland & Hart's representation was unauthorized. Plaintiffs' argument is valid only if Holland & Hart had reason to know of GERI's improper conduct. Otherwise, even though Plaintiffs may have a claim against GERI for its actions, they are bound to Holland & Hart by the actions of GERI, their agent. The Court must determine whether Holland & Hart had reason to know that GERI exceeded the scope of its agency with Plaintiffs and therefore lacked actual authority.

Holland & Hart argues that it could not have known of GERI's improper conduct because there was no improper conduct — GERI acted within the scope of its actual authority, express or implied, under the Management Agreement. In support of its express authority argument, Holland & Hart identifies the section in the Management Agreement authorizing GERI to retain counsel on Plaintiffs' behalf. (Dkt. no. 86-7, Exh. G, § 7.1.) Plaintiffs counter that the cited section limits this authorization to disputes involving "operation, maintenance and repair of the Property." (*Id.*) Holland & Hart highlights several other provisions of the Management Agreement giving GERI broad power over the operation, management, and maintenance of the Property. (Dkt. no. 86.) But none of these provisions expressly authorizes GERI to retain counsel in the context of defending title to the Property.

Viewing the facts in the light most favorable to Plaintiffs, the Management Agreement does not expressly authorize GERI to retain counsel to defend a lawsuit involving a claim to the Property. Although the Management Agreement provides GERI with broad power over the operation, management, and maintenance of the Property, the language of the Management Agreement suggests that these powers refer to the day-to-day oversight and upkeep of the Property. (*See* dkt. no. 86-7, Exh. G, §§ 2.2, 2.3, 2.5.1, 2.10.1, 2.10.4, 7.1.) Under the TIC Agreement, the Investors retain the power to manage the Property's disposition. (*See* dkt. no. 86-8, Exh. H, §§ 1.3, 5.1.) Thus, viewing the facts in the light most favorable to Plaintiffs, there is no express authorization for GERI's actions.

///

The Court, however, agrees with Holland & Hart that it acted with implied actual authority. "Implied authority is that which the agent reasonably believes himself to possess as a result of representations by the principal or of acts of the agent permitted by the principal over a course of time in which the principal has acquiesced." *Coblentz*, 322 P.2d at 907. Under Nevada law, a principal's ratification of an agent's acts by acquiescence requires knowledge and acceptance of the benefits of the agent's actions. *See Fed. Mining & Eng'g Co. v. Pollack*, 85 P.2d 1008, 1011-12 (Nev. 1939).

The undisputed evidence is sufficient to establish that GERI had implied authority to retain counsel and manage the Receiver Action on behalf of the Investors, and that Plaintiffs ratified these actions as GERI carried them out. GERI first retained Holland & Hart to defend the Investors' interests in the Property shortly after receiving the Receiver's letter in June 2008. (Burton Dep., dkt. no. 86-9, Exh. K at 13.) GERI then notified Plaintiffs in the November 19, 2008, quarterly report that it had "retained a national law firm to pursue legal remedies to expedite" resolution of the dispute involving the Property. (Dkt. no. 86-9, Exh. M.) The expense report in the same quarterly report listed payments to Holland & Hart. (*Id.*) The March 5, 2009, and June 2, 2009, quarterly reports further updated Plaintiffs on the status of the litigation and listed more payments to Holland & Hart in the included expense report. (*Id.*)

The August 25, 2009, quarterly report disclosed the Receiver Action and the retained counsel's projections. (*Id.*) The November 23, 2009, February 26, 2010, and June 11, 2010, quarterly statements all updated the Investors on the status of the litigation. (*Id.*) These reports included payments to Holland & Hart in their expense reports. (*Id.*) The June 11, 2010, report stated:

> Please know that we are doing everything we can to achieve the best possible outcome for the owners and the property. We will keep you apprised as mediation or settlement negotiations develop and will seek investor approval prior to agreeing to any settlement with the Receiver.

(*Id.*)

///

In addition to the quarterly reports, GERI also conducted regular conference calls in which Investors could participate and during which participants discussed litigation surrounding the Property. (*See, e.g.*, Farinas Dep., dkt. no. 86-4, Exh. D-5 at 123; Streiff Dep., dkt. no. 86-7, Exh. E at 19-20.) Representatives from Holland & Hart participated in some of the conference calls. (Burton Dep., dkt. no. 86-9, Exh. K at 50-55.) One of the Investors, an attorney, even had direct communications with Holland & Hart about the status of, and issues raised in, the Receiver Action. (*Id.* at 54-55.)

Plaintiffs maintain that GERI exceeded its express authority under the Management Agreement by retaining counsel to defend title to the Property. Plaintiffs contend that the reports and conference calls were insufficient to put them on notice of GERI's actions because Holland & Hart was not identified as the "national law firm" retained by GERI, the payments to Holland & Hart were "buried deep within the 20 to 30 page general ledgers" included in the report, and the Motion to Intervene was never specifically disclosed. (Dkt. no. 92.) These arguments are unavailing — whether Plaintiffs chose to review the quarterly reports or participate in the conference calls does not change the fact that they acquiesced to GERI's management of the litigation on their behalf. The reports and conference calls clearly indicated that GERI had retained counsel to defend the Property.[3] Rather than objecting, many Plaintiffs indicated that they specifically relied on GERI to manage the litigation. (*See, e.g.*, John K. Rausch Dep., dkt. no. 86-4, Exh. D-1 at 76; June Rausch Dep., dkt. no. 86-4, Exh. D-2 at 38; White Dep., dkt. no. 86-5, Exh. D-15 at 120.) Thus, Plaintiffs acquiesced to GERI's retention of counsel to defend their interests with knowledge and received the benefits of that representation. Plaintiffs further acquiesced to GERI's management of the litigation

---

[3] Plaintiffs claim to be unaware that GERI used the Property's operating funds to pay Holland & Hart's legal fees despite the inclusion of payments to Holland & Hart in the reports to the Investors. However, such a claim of ignorance is simply unpersuasive and raises only a metaphysical doubt about the material facts. Who else would cover the fees to defend title to the Property if not the Investors? More importantly, Plaintiffs have failed to produce specific evidence showing such a dispute exists.

for nearly two years. At that point, only a minority of Investors objected to GERI's actions and retained separate counsel — the majority of Investors continued to acquiesce to GERI's management of the litigation. Plaintiffs' acquiescence to GERI's actions gave GERI implied authority to retain counsel and manage the litigation on behalf of the Investors.

The Court also rejects Plaintiffs' argument that they were unaware that they had been made parties to the Receiver Action through the motion to intervene. Although the Receiver improperly filed suit against GERI, the action involved ownership of the Property and necessarily implicated Plaintiffs' rights. GERI had implied authority to manage litigation involving ownership of the Property and intervened for the real parties in interest to advance the litigation efficiently.[4] Moreover, even if the instruction to intervene in the Receiver Action stands apart from GERI's other actions in managing the litigation, Holland & Hart would have no reason to know of GERI's improper conduct, and Plaintiffs would still be bound by their agent's actions.

The Court therefore finds that Holland & Hart was authorized to represent Plaintiffs in the disputes involving the Property. Because Holland & Hart acted with implied actual authority, Plaintiffs' allegations are insufficient to sustain a claim against Holland & Hart for legal malpractice or breach of fiduciary duties.

Plaintiffs also allege that Holland & Hart breached its duties to Plaintiffs in representing them because it acted at the direction of GERI, failed to disclose a conflict of interest caused by representing both Plaintiffs and GERI, accepted payment from GERI for legal fees that rightfully belonged to Plaintiffs, and caused Plaintiffs to incur unnecessary legal fees as a result of being made parties to the Receiver Action. None of these allegations is a breach of Holland & Hart's duties as GERI was authorized to manage the litigation on Plaintiffs' behalf, which includes paying Holland & Hart's fees.

---

[4] Plaintiffs conceded at oral argument that had Holland & Hart not filed the motion to intervene, the Investors, as owners of the Property, would have likely needed to seek intervention at some point.

Additionally, because GERI's and Plaintiffs' interests aligned, there was no conflict of interest. Any representation of GERI occurred precisely because of GERI's role as Plaintiffs' agent. Finally, no matter what procedural route the Receiver Action took, Plaintiffs would be embroiled in the lawsuit — and would incur legal fees in defending the Property — because ownership of the Property was central to the Receiver Action.

## IV.     CONCLUSION

It is therefore ordered that Defendant Holland & Hart LLP's Motion for Summary Judgment (dkt. no. 86) is granted. The Clerk of the Court is instructed to enter judgment in favor of Holland & Hart LLP.

It is further ordered that Defendant Holland & Hart LLP's Motion to Exclude Plaintiffs' Expert Witness (dkt. no. 88) is denied as moot.

The Clerk of the Court is instructed to close this case.

DATED THIS 8th day of September 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE